(Not for publication)                                                              (Docket No. 7)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                            :
RE-SOURCE AMERICA, INC.                       :
                                                            :
                               Plaintiff,          :          Civil No. 06-3485 (RBK)
                                                            :
                  v.                                     :          **OPINION**
                                                            :
CORNING INCORPORATED,                        :
                                                            :
                               Defendant.          :
                                                            :
_____:

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Corning Incorporated's Motion to

Transfer, or in the alternative, to Dismiss Plaintiff's Complaint.  For the following reasons, the

Court will treat this motion as a Motion to Transfer pursuant to 28 U.S.C. § 1404(a) and will

transfer this case to the Western District of New York.

**I.  BACKGROUND**

Plaintiff Re-Source America, Inc. ("Re-Source") brings this suit against Defendant

Corning Incorporated ("Corning").  Re-Source is a Pennsylvania corporation "engaged in the

business of reclamation and rehabilitation of packaging and shipping materials." (Pl. Opp. at 2.)

Corning is a New York corporation that specializes on "diversified technology" with a "focus on

the telecommunications, flat planel display, environmental, life sciences and semiconductor

industries."  (Def. Mem. at 2.)

In 1993, Re-Source created a package return system that was adaptable to the optical fiber spools and other packaging used by Corning and its competitors. (Grey Aff. ¶ 3.) Corning and Re-Source developed a business relationship shortly thereafter, working together for several years without the benefit of a written contractual agreement. (Id. ¶ 3.)  As part of this business relationship, Re-Source implemented a system whereby it would recover and rehabilitate all of the packaging produced or used by Corning at its Wilmington, North Carolina plant. (Id. ¶ 4.)

To account for a dramatic worldwide increase in demand for optical fiber in 2000, Re-Source agreed to deepen its business reliance on Corning when Corning acquired optical fiber joint ventures in the United Kingdom and Germany.  (Id. ¶ 7.)  Accordingly, in June 2000,  Re-Source and Corning entered into a written contract (the "Agreement") titled the "Worldwide Agreement Relating to Packaging Refurbishment"  that set the terms for Re-Source's worldwide reclamation and rehabilitation of Corning products for a duration of three years.  (Compl. Exhibit A.)  Michael J. Grey, Re-Source's President and CEO, negotiated and executed the Agreement. At the time, Grey worked in Re-Source's corporate headquarters in Feasterville, Pennsylvania. (Rice Cert. ¶ ¶ 4, 5.)  C.R. Rice, then Manager of Procurement Operations for Corning's Optical Fiber Division, negotiated the agreement for Corning from North Carolina. (Rice Cert. ¶ 6) Kathryn M. Murphy, Vice President of Materials Management, executed the Agreement on behalf of Corning from Corning's executive offices located in Corning, New York. (Juan Cert. ¶ 8).

The Agreement between Re-Source and Corning  protected and guaranteed Corning's access to Re-Source's services and provided that Corning would "supplement" Re-Source's costs

should volumes at any plant drop below levels agreed upon by the parties for three months or more. (Compl. Ex. A).  Additionally, the Agreement included a choice of law and forum clause. (Rice Cert. ¶ 2.)  This clause specifically provides:

> This Agreement shall be governed by, interpreted and construed, and performance hereunder shall be determined in accordance with the law of the State of New York (USA), without regard to its conflicts of law principles.  In the event of any dispute, claim or controversy relating to the Services performed/expected to be performed hereunder, or any other matter between Seller and [Corning] relating to the Services or this Agreement, the parties agree to seek an amicable settlement prior to commencing any litigation.  In the event of litigation, any action shall be venued (to the exclusion of any other venue, notwithstanding any argument relating to the convenience of the forum) in the United States District Court, Western District of New York.

(Compl. Ex. A at 4.)

Re-Source and Corning did not renew the Agreement at the time of its expiration on July 31, 2003.  However, their business relationship continued several more years despite the decline in global demand for optical fiber.  (Grey Aff. ¶ 7.) Corning effectively terminated its business relationship as of May 31, 2006,  and refused to re-assess its decision despite two letters sent by Re-Source requesting Corning to do so. (Juan Cert. ¶¶ 11, 12, Ex. 2, 3.)  As a result of the financial ramifications of Corning's decision to cease business with Re-Source, Re-Source closed all its facilities and terminated all employees with the exception of its administrative staff.  (Grey Aff. ¶ 9.)  The remaining staff currently operates out of the owner's home in Avalon, New Jersey. (Grey Aff. ¶ 7.)

Re-Source filed this Complaint in the United States District Court for the District of New Jersey on July 28, 2006.  In the Complaint, Re-Source alleges breach of contract, fraud in the inducement, misrepresentation, breach of oral contract, bad faith, and intentional business torts.

(Am. Compl.¶¶ 53-81 ).  Corning filed the present motion to transfer venue, or alternatively, to dismiss Re-Source's Complaint on October 2, 2006.

## II.  DISCUSSION

### A.  Transfer of Venue

In federal courts, the effect of a contractual forum selection clause in a diversity case is determined by federal, not state, law.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995). Because "questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature, federal law applies in diversity cases irrespective of [the Erie Doctrine]." Id. (quoting Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1991)).

In the Third Circuit, the procedure for enforcing a forum selection clause is to bring a motion to transfer from the initial federal forum to another federal court. Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 297-98 (3d Cir.2001). Alternatively, a Rule 12(b)(6) dismissal is also a "permissible means of enforcing a forum selection clause that allows suit to be filed in another federal forum." Id. at 298; Crescent Int'l Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988). However, the Third Circuit cautions that "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." Salovaara, 246 F.3d at 299.

If transfer is the appropriate remedy, both 28 U.S.C. § 1404(a) and § 1406 vest the district courts with the power to do so. To determine which statute is appropriate, the inquiry is whether the district court in which the plaintiff commenced the original action is a proper venue. See

Jumara, 55 F.3d at 878. "Section 1404(a) provides for the transfer of a case where both the

original and the requested venue are proper. Section 1406, on the other hand, applies where the

original venue is improper and provides for either transfer or dismissal of the case." Id.  Only §

1406 can support a dismissal. Id.

Without considering the forum selection clause, venue in New Jersey is proper venue

under § 1391. Here, neither party disputes that Corning is subject to personal jurisdiction in the

District of New Jersey, as it seems clear that Corning transacts business in New Jersey by

soliciting customers and selling its products there. See 28 U.S.C. § 1391(c) (venue proper in

judicial district in which corporation is doing business); see also Stewart Org., Inc. v. Ricoh

Corp., 487 U.S. 22, 29 n.8 (1988) ("The parties do not dispute that the District Court properly

denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because

respondent apparently does business [there]."). Thus, because venue is proper in New Jersey,

disregarding the forum selection clause, outright dismissal is inappropriate. Instead, the

procedural vehicle for enforcement of the forum selection clause should be a motion to transfer

the case to the Western District of New York  under 28 U.S.C. § 1404(a).  Jumara, 55 F.3d at

878; Salovaara, 246 F.3d at 297.

### B.  Section 1404(a) Analysis

Pursuant to § 1404(a) and "for the convenience of parties and witnesses and in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a).  Typically, the burden of establishing

the need for transfer rests with the movant, Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir.

1970), and the plaintiff's forum choice "should not be lightly disturbed."  Jumara , 55 F.3d at

879.  However, when a plaintiff freely contract for a venue, deference to a subsequent choice of a different forum is inappropriate.  Id. at 880. In addition, when the forum selection clause is valid, the plaintiff bears the burden of demonstrating why the contractual choice of forum should not be binding.  Id.; see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972).

In the Third Circuit, a forum selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement establishes that: (1) it is the result of fraud or overreaching; (2) enforcement would violate strong public policy of the forum; or (3) enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable. MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003) (citing Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir. 1983)); see also Wall Street Aubrey Golf, LLC v. Aubrey, No. 05-5027, 2006 WL 1525515, at *2 (3d Cir. June 05, 2006) ("Forum selection clauses are entitled to great weight, and are presumptively valid.").

In the instant matter, the Western District of New York is a valid venue, given that subject matter jurisdiction in this action is based on diversity jurisdiction, and because Defendant (i.e. Corning) resides in New York and is subject to personal jurisdiction there. See 28 U.S.C. § 1391(a) (establishing the requirements for proper venue in diversity actions).  Nevertheless, Re-Source argues that transfer to the Western District of New York is improper because the forum selection clause was a product of overreaching,  it would pose  "such serious inconvenience to Re-Source so as to be unreasonable," and because the tort claims asserted in Re-Source's Amended Complaint are unrelated to the Agreement  (Pl. Opp. at 1.).

1.  Product of Overreaching

In the instant matter,  Re-Source failed to provide this Court with any evidence to

suggest that the choice of law and forum clause was a product of overreaching.  When a party

asserts fraud or overreaching, that party must demonstrate that the forum-selection provision

itself, not the entire contract, is a product of overreaching.  Scherk v. Alberto-Culver Co., 417

U.S. 506, 519 n.14 (1974); Nat'l Micrographics Sys. v. Canon U.S.A., 825 F. Supp. 671, 675

(D.N.J. 1993).   Re-Source's conclusory assertion that it was coerced into the Agreement as a

whole does not satisfy this burden.  Additionally, Re-Source fails to offer any evidence to

indicate that the terms of the Agreement were non-negotiable, that Re-Source was unrepresented

by counsel, and that Corning did not give Re-Source enough time to review the Agreement.

Likewise, Re-Source failed to allege that it attempted to negotiate the terms of the Agreements

and was rebuffed. See Danka Funding, L.L.C., v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.,

21 F. Supp. 2d 465, 471 (D.N.J. 1998) ("Defendant's claim that it thought the lease-form was

non-negotiable, while admitting that it had failed to attempt to negotiate any portion of the

printed terms . . . is simply inadequate."); Cadapult Graphic Systems, Inc., v. Tektronix, Inc., 98

F. Supp. 2d 560, 567 (D.N.J. 2000).

Moreover,  Re-Source's summary assertions that it was "compelled" to enter into the

Agreement because Corning"exercis[ed] unilateral and unfettered virtual control over Re-

Source's production," and that Re-Source forewent other business opportunities are insufficient

to set aside the choice of law and forum clause.

The Court finds that Re-Source voluntarily entered the Agreement with Corning.  This

case concerns two sophisticated parties negotiating a contract at arms length. Accordingly, this

Court concludes that there is no evidence in the record to demonstrate that the choice of law and

forum clause was a product of overreaching.

> ### 2. Inconvenience

Similarly, Plaintiff failed to demonstrate that litigating in the Western District of New York would be so burdensome as to render a transfer of venue unreasonable.   When deciding motions to transfer venue pursuant to 28 U.S.C. § 1404, courts examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara, 55 F.3d at 879 (quoting 15 Wright, Miller & Cooper § 3847).  The relevant factors relate to both public and private interests. The private interests include (1) the parties' preferences; (2) whether the claim arose elsewhere; (3) the convenience of the parties; (4) the convenience of witnesses, but only to the extent that witnesses may actually be unavailable for trial in one of the fora; and (5) the location of books and records, but only to the extent that files could not be produced in the alternative forum. Id. The public interests include (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with any applicable state law. Id. at 879-80.  Overall, "'mere inconvenience or additional expense is not the test for unreasonableness'." Danka, 21 F. Supp. 2d at 472 (quoting Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341, 344 (3d Cir. 1966)).

As to the relevant private factors, the convenience of the parties and witnesses and the location of documents do not clearly favor either forum.  Re-Source contends that it would be inconvenient and costly for Re-Source to move all its documents and to provide transportation

for all potential witnesses in this matter who are located within proximity to this Court or in

North Carolina.  (Pl. Opp. at 6.).   Although it seems plausible that testimony from some non-

party witnesses located outside of New York could be necessary, it seems equally plausible that a

significant portion of the necessary documentation and witness testimony would have to come

from Corning and its offices and employees in New York and North Carolina.  Moreover, there is

no evidence that any witnesses for Re-Source would be totally unavailable in New York as

opposed to merely inconvenienced by the distance.

The private factor regarding where the cause of action arose, however, clearly weighs in

favor of New York rather than New Jersey, as it appears the parties did not negotiate the

Agreement in New Jersey, Corning personnel never visited Re-Source's New Jersey office, Re-

Source never performed any services for Corning in New Jersey, and this venue was only an

option after Re-Source moved its corporate headquarters to New Jersey, which occurred after the

expiration of the Agreement (See Def. Reply Mem. at 1-2.)

Similarly, the public factors weigh in favor of transferring the action to the Western

District of New York. The public policy consideration does not clearly favor either fora as the

public policies of both fora derive from federal law. Optopics Laboratories, Inc. v. Nicholas, 947

F.Supp. 817, 826 (D.N.J.1996) (citing FAA, 9 U.S.C. §§ 1-16.).   Also, the disputes at issue

potentially relate not only to the actions, rights and responsibilities of Re-Source in Pennsylvania,

North Carolina, and New Jersey, but they certainly involve the actions, rights, and

responsibilities of the Defendant corporation, which is a New York corporation, with its

corporate headquarters located in New York. Therefore, it is not clear that this is a "local

controversy" of a single state that ought to be decided at home.  However, the choice of law and

forum clause clearly provides that disputes relating to the agreement are governed by New York law.  Presumably, a district judge in the Western District of New York has more familiarity with New York law than this Court.  As a result, the public factor regarding familiarity with state law weighs in favor of a transfer.

### 3.  Choice of Law and Forum Clause and Tort Claims

Finally, Re-Source argues that even if the choice of law and forum selection clause is enforceable as to its breach of  contract claim,  it is not enforceable to its tort claims.  This argument lacks merit.    In Crescent Int'l. Inc.v. Avatar Communities, Inc., the Third Circuit concluded that plaintiffs  may not avoid forum selection clauses by "simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum."  857 F.2d 943, 945 (3d Cir. 1988).  As a result, the court concluded that the parties' forum selection clause applied not only to plaintiff's breach of contract claim, but also to plaintiff's RICO, fraud, unfair competition and tortious interference claims.  Id. at 944.   The court reasoned, "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."  Id.  at 944.  "Permitting a more narrow interpretation of a forum selection clause 'runs counter to the law favoring forum selection clauses.'"  Id. at 945.

Accordingly, absent any compelling evidence offered by Re-Source to part with the rule established in the Third Circuit, this Court finds no reason why the forum selection clause should not apply to all claims comprising this matter.  Re-Source set forth no basis for their tort claims independent of the Agreement.  To the contrary, the pleadings indicate that the tort claims alleged arise out of events that transpired during the contractual period.  Thus, absent the

10

contractual relationship, Corning's actions would not have occurred. Therefore, the Court holds that the choice of law and forum selection clause applies to Re-Source's tort claims as there "is no evidence suggesting that the [choice of law and forum selection clause] was not intended to apply to all claims growing out of the contractual relationship." Coastal Steel v. Tilghman Whellabrator Ltd., , 709 F.2d 190 203 (3d Cir. 1983), overruled on other grounds, Lauro Lines v. Chasser, 490 U.S. 495 (1989).

In conclusion, Re-Source fails to meet its burden of demonstrating that the choice of law and forum clause was the product of overreaching.  In addition, Re-Source fails to meet its burden of establishing the level of inconvenience required to overcome the presumption created by the parties' contractual choice of law and forum-selection. See Jumara, 55 F.3d at 880 (noting that plaintiff has burden of showing "why they should not be bound to their contractual choice of forum").  Likewise, there is no reason why Re-Source's tort claims should not be governed by the choice of law and forum clause and be litigated in this jurisdiction.   As discussed above, no evidence in the record demonstrates that the choice of law and forum clause was a product of overreaching and the relevant public and private factors are either inconclusive as to the preferable forum, or they actually weigh in favor of transferring the case to the Western District of New York.  Because none of the relevant considerations weigh in favor of continuing this action in the District of New Jersey, the Court will transfer the action to the Western District of New York pursuant to 28 U.S.C. § 1404.

## III.  CONCLUSION

For the foregoing reasons, this Court will grant the Defendant's Motion to Transfer

Venue pursuant to 28 U.S.C. § 1404.  The accompanying Order shall issue today.


Dated: <u>11/19/2007</u>                                          <u>s/Robert B. Kugler</u>
                                                         ROBERT B. KUGLER
                                                         United States District Judge

12